# LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY *v.* NATIONAL CAR–BRAKE SHOE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Argued January 9th, 10th, 1884.—Decided January 28th, 1884.

*Patent.*

In this case it was held, that, on the record herein, claim 2 of letters patent No. 40,156, granted to James Bing, October 6th, 1863, for an "improved shoe for car-brakes," namely, "The combination of shoe A, sole B, clevis D and bolt G, the whole being constructed and arranged substanti; lly as specified," does not embody any lateral rocking motion in the shoe, as an element of the combination.

On such a construction, there was, on the record herein, patentable novelty in said claim ; and a structure having the same four parts in combination, with merely formal and not substantial mechanical differences, infringes said claim.

*Mr. George Payson* for appellant.

*Mr. Thomas A. Banning* (*Mr. Ephraim Banning* was with him), for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought by the National Car-Brake Shoe Company, a corporation, against the Lake Shore and Michigan Southern Railway Company, in the Circuit Court of the United States for the Northern District of Illinois, for the infringement of letters patent No. 40,156, granted to James Bing as inventor, October 6th, 1863, for 17 years, for an "improved shoe for car-brakes." The bill was filed June 7th, 1880, less than 4 months before the expiration of the patent. The answer, which was filed October 4th, 1880, 2 days before the patent expired, denies infringement and alleges that the thing patented had been in public use or on sale, with the consent and allowance of Bing, for more than 2 years prior to his application for the patent, and that the invention had been abandoned by him to the public. There is no defence of want of novelty or patentability set up in the answer. The replication was filed on the same day with the answer. No proofs were taken, but 5 days after the filing of the replication, and 3 days after the patent expired, the parties entered into the following written stipulation :

"It is hereby stipulated by and between the parties to the above entitled suit, for the purposes of said suit and no other, as follows, to wit : 1. That the patent sued on, No. 40,156, issued to James Bing, October 6th, 1863, may be considered as formally offered in evidence, and that complainant is the exclusive owner thereof. 2. That the small brass model offered by complainant, and marked 'Complainant's Exhibit Bing's Brake-Shoe,' is a correct representation of the invention described in said patent, except that defendant claims that said model has not enough rock-

ing motion. 3. That the small wooden model offered by defendant, and marked Defendant's Exhibit A, is also a correct representation of the said invention, except that complainant claims that said model has too much rocking motion. 4. That defendant has used two different kinds of brake-shoes, both of which are claimed by complainant to be infringements of the second claim of said patent, but as to both of which infringement is denied by defendant. 5. That the first of said brake-shoes is constructed in all respects like that described in said patent, except that the two parts, viz., the shoe and the sole, are fitted on each other so snugly as to have no rocking motion. 6. That the second of said shoes is correctly represented by the small wooden model marked Defendant's Exhibit B, and that it also has no rocking motion. 7. That brake-shoes having a detachable sole attached to the shoe by bolts passing through the shoe and sole at right angles to the face of the sole, one at the top and one at the bottom, and secured by nuts screwed on to the inner ends of said bolts, so that the sole could be taken off upon the removal of said bolts, had been known and used in the United States for some years prior to the said invention of said Bing, and that the small wooden model marked 'Defendant's Exhibit C' is a correct representation of said brake-shoes. 8. That said shoe last mentioned was suspended from the truck by a hanger or clevis attached to a bolt passing through a hole at the top of said shoe, as shown in said model. 9. That neither of said brake-shoes used by defendant has the lateral rocking motion described in said patent, or infringes the first claim of said patent. 10. That, if the court be of the opinion that said lateral rocking motion forms no part of the second claim of said patent, then the first of said defendant's brake-shoes above mentioned is admitted to be an infringement of said claim, and the decision as to that shoe shall be in favor of complainant, provided the court shall also be of the opinion that there is, on that construction, any patentable novelty in said claim. But, if the court be of the opinion that said lateral rocking motion does form a part of said second claim, or that there is no patentable novelty in said claim if so construed as to exclude said rocking motion, then, in either of these cases, the decision shall be in favor of defendant as to said first shoe. 11. That, if the court shall be of the opinion that said lateral rocking motion forms no part of the second claim, and

that defendant's second brake-shoe, viz., that the Defendant's Exhibit B, is, in its mechanical construction, substantially the same as the combination described in said claim, then the decision as to that shoe also shall be in favor of complainant, provided the court shall also be of opinion that there is any patentable novelty in said claim when so construed. But, if the court shall be of opinion, either that said lateral rocking motion does not form a part of said second claim, or that the mechanical construction of said shoe-brake is not substantially the same as that shown in said claim, or that there is no patentable novelty in said claim if so construed as to exclude said rocking motion, then, in either of said cases, the decision as to that shoe shall be in favor of defendant. 12. That, in case the court finds the issues in favor of the complainant, both parties waive a reference to the master, and agree that complainant's damages may be assessed at the sum of two hundred dollars. 13. That all the evidence in this case is comprised in this stipulation, the models therein referred to, and the said letters patent."

On that stipulation, and the models referred to in it, and the patent, the case was heard in the Circuit Court. That court filed a written opinion on the 26th of October following, 9 Bissell, 503, upon which a decree was entered on the same day, as of the preceding 9th of October, declaring the patent to be good and valid in law, so far as regards the second claim thereof, and to be owned by the plaintiff; that the defendant had infringed the patent by using the invention secured by the second claim; and that the plaintiff recover $200 damages, in accordance with the stipulation, the same to be in full satisfaction of all claims of the plaintiff against the defendant on account of the defendant's infringement of the patent. The defendant has appealed.

The specification of the patent is in these words:

"My invention relates to the construction of shoes or rubbers for car-wheels, and consists: Firstly. In constructing the shoe of two parts, in the peculiar manner described hereafter, so that the part in contact with the wheel can accommodate itself to the same. Secondly. In the peculiar combination, described hereafter,

of the two parts of the shoe, the clevis by which the shoe is suspended to the truck, and the bolt which secures the clevis to the shoe, and the two parts of the shoe to each other. In order to enable others skilled in this class of mechanism to make and apply my invention, I will now proceed to describe its construction and operation. On reference to the accompanying drawing, which forms a part of this specification, Fig. 1 is a vertical section of my improved shoe for railway car-brakes ; Fig. 2 a sectional plan on the line 1, 2, Fig. 1 ; and Fig. 3 a front view of the shoe. Similar letters refer to similar parts throughout the several views.

A is the shoe, and B the sole, the latter being formed to fit the periphery of the car-wheel (part of which is shown by the line *x*), and having a lug *a*, which fits between the lugs *b b'* on the shoe. D is a clevis, the upper end of which is suspended to the truck of the railway car, the lower end being arranged to embrace the lugs *b* and *b'* of the shoe, a bolt, G, passing through the lower end of the clevis, through the lugs *b* and *b'* of the shoe, and through the lug *a* of the shoe B. It will be observed, on reference to Fig. 2, that the lug *a* is made tapering, and that the bolt G fits loosely in the said lug, as well as in the lugs *b* and *b'*, so that the sole is self-adjustable laterally, for a purpose described hereafter. A projection *d* on the sole B fits into a socket in the shoe, in such a manner that the sole can vibrate laterally in the said socket, while the

projection serves to maintain the shoe and sole in their proper relative positions. H is the usual brake beam, one end of which fits into a recess in, and is secured to, the shoe A, the other end of the beam being secured to a similar shoe on the opposite side of the car track. The peripheries of car-wheels are always bevelled or inclined, so that it becomes necessary to make the soles of the ordinary shoes or rubbers of a corresponding bevel, one shoe at one end of the beam being bevelled in one direction, and the other shoe at the opposite end of the beam being bevelled in a contrary direction. Even when the usual shoes are properly fitted to the bevelled peripheries of the wheels, the lateral movement of the axles, as the wheels traverse curves of the track, is such that the ordinary shoes cannot fit accurately at all times. Another evil attending the use of ordinary shoes or rubbers is, that, as the lateral movement of the axles takes place, an undue strain is imparted to the brake beam. These difficulties are avoided by my invention, inasmuch as the sole B is permitted to have a lateral rocking motion on the shoe, and can at once accommodate itself to the bevel of the wheel, or to any variation caused in that bevel by the lateral movement of the axle. Another improvement in my invention is the peculiarly simple arrangement of the clevis which supports the shoe, the bolt G serving the purpose of connecting the clevis to the shoe and the latter to the sole."

The claims of the patent are as follows:

"Firstly. The shoe A and sole B, both being constructed and adapted to each other substantially as described, so that the sole can have a lateral rocking movement on the shoe, for the purposes specified. Secondly. The combination of shoe A, sole B, clevis D, and bolt G, the whole being constructed and arranged substantially as specified."

It is stipulated that neither of the two brake-shoes of the defendant infringes the first claim of the patent, for the reason assigned in the stipulation, that neither of them has the lateral rocking motion described in the patent, although it is stipulated, as to one of them, that it is constructed in all respects like that described in the patent, except that the shoe and the sole are fitted to each other so snugly as to have no rocking motion.

1. The first question presented for decision, on the stipulation, is as to whether the lateral rocking motion forms a part of the second claim of the patent. The Circuit Court held that the second claim did not embody, as an essential element, the lateral rocking motion, and that such element need not be found in a car-brake shoe in order to make it an infringement of the second claim. The view urged on the part of the defendant is, that the combination of the shoe, the sole, the clevis, and the bolt cannot, as a whole, be "constructed and arranged substantially as specified," if the whole is not so constructed and arranged as to admit of the lateral rocking motion, and that there is no suggestion in the specification of any construction or arrangement in which the sole has not a lateral rocking motion on the shoe. We think that the Circuit Court was correct in its construction of the second claim, on the record before it. The first part of the invention is stated in the specification to be the peculiar manner of constructing the shoe proper and the sole in two parts, in such way that the sole can accommodate itself to the wheel by reason of its having a lateral rocking motion on the shoe proper. That is the subject-matter of the first claim. The second part of the invention, or, as the specification says, the second improvement in the invention, is stated to consist in the peculiar combination of the shoe proper, the sole, the clevis, and the bolt, the clevis suspending the shoe and its sole to the truck, and the bolt securing the clevis to the shoe proper and that to the sole. The combination of the mode of suspending by the clevis with the mode of securing by the bolt is the same, whether the sole has a lateral rocking motion or not. That combination, as a whole, is constructed and arranged substantially as specified, even where there is no lateral rocking motion to the sole. The words "substantially as specified" mean "substantially as specified in regard to the combination which is the subject of the claim." The adaptation of the shoe proper and the sole to each other in such way as to produce or allow of the lateral rocking motion was the subject of the first claim. The combination formed by the peculiar arrangement of the clevis and the bolt in reference to the shoe proper and the sole is a com-

bination which has no effect to produce or prevent the lateral rocking motion; and the stipulation states that this combination can be used constructed exactly as described in the patent when the shoe proper and the sole are so snugly fitted together that the sole has no rocking motion. In consonance with this view, the specification and the claims maintain a distinction between the arrangement for the rocking motion and the manner of combining together the shoe proper, the sole, the clevis, and the bolt. The stipulation declares that when the combination of the second claim is made there may be a lateral rocking motion in the sole or there may not, for it states that the exact structure of the patent may be copied and yet the fitting of the sole to the shoe proper may be so snug that there may be no lateral rocking motion in the sole, and so no infringement of the first claim. Hence, a loose fitting of the same parts in the same structure would produce a lateral rocking motion and an infringement of the first claim. There is no suggestion that the combination of the second claim was not new; and, there being nothing shown in the state of the art which requires any such construction of the second claim as that contended for by the defendant, and it being fairly susceptible of the opposite construction, and the latter being one which is commensurate with the real invention embraced in the second claim, and one which prevents the real substance of that invention from being bodily appropriated by an infringer, it is proper to give the claim such a construction.

2. The next question raised by the stipulation is as to whether there is any patentable novelty in the second claim, on such a construction. No question of novelty is raised in the answer, and nothing is introduced in evidence on that subject, or on the state of the art, except what is found in paragraphs 7 and 8 of the stipulation. The opinion of the Circuit Court, which is set forth in the record, speaks of "the various patents that have been put in evidence," but none such are before us; and the brief of the appellee states that the model marked "Defendant's Exhibit C" (mentioned in paragraph 7 of the stipulation) "has been selected as the nearest approach to the patented invention, from a large number used in the court below." This

would indicate that the full case presented to the court below is not presented here. As, however, the parties to this suit have stipulated as to what the record is, so far as anything in the controversy between them, in this suit, is concerned, and the stipulation states that it is a stipulation for the purposes of this suit and no other, and the clerk of the Circuit Court certifies the transcript to be "a true, correct, and complete transcript of the record of all the proceedings" had in the Circuit Court in this suit, "as appears from the files and records of" the court remaining in his custody and control, what is furnished to us must be accepted as sufficient for the purposes of this suit, leaving our decision in the case to stand, in its bearing in respect to other suits on the same patent, with only that weight which is due to it in view of the manner in which the case is presented in the record.

The brake-shoe described in paragraphs 7 and 8 of the stipulation and shown in "defendant's Exhibit C," it is very clear, does not contain what is covered by the second claim of the patent, as we have defined it, or destroy its patentable novelty. Bing accomplishes by one bolt what required three bolts in the prior structure. His whole structure can be taken off from the clevis by removing the one bolt, while in the prior structure it required the removal of two bolts to take off the sole from the shoe proper, and the removal of a third bolt to take off the shoe proper from the clevis.

3. On the foregoing views, it is admitted by paragraph 10 of the stipulation, that the first of the defendant's brake-shoes infringes the second claim, and there must be a decision, as to that shoe, in favor of the plaintiff.

4. The only remaining question is as to whether the defendant's other brake-shoe, Exhibit B, is, in its mechanical construction, substantially the same as the combination described or shown in the second claim. In the Bing brake-shoe, the clevis is a three-sided structure, the two lower ends of which embrace the two lugs of the shoe proper, and the bolt passes through the lower end of one arm of the clevis, then through one of the lugs on the shoe proper, then through the lug on the sole, then through the other lug on the shoe proper, and then through the

lower end of the other arm of the clevis, and the sole cannot be removed without first removing the bolt, because the lug on the sole fits in between the lugs on the shoe proper. In the defendant's structure there is no bolt-hole through the lug on the sole, but there is a curved depression made in its top, in which the curved lower end of the clevis rests. The clevis does not have two arms, the lower ends of which embrace the lugs of the shoe proper, and the bolt goes through one of those lugs, then through a hole in the lower end of the clevis (the clevis being a vertical piece without arms and not three-sided), and then through the other one of those lugs, but the bolt does not go through the lug on the sole. That lug is kept in place by the pressure on it of the curved lower end of the clevis, which cannot move out of position, because the bolt goes through it and holds it. The bolt alone, without the clevis, will not confine the lug on the sole. The lug on the sole cannot be removed until the bolt is removed and the clevis is detached. The shoe proper, the sole, and the clevis are combined by the single bolt which secures together the clevis, the shoe proper, and the sole. The bolt and the clevis perform the same office in the two structures, and the mechanical differences are merely formal and not substantial. The combination consists of the same four parts, differing only in form.

*The decree of the Circuit Court is affirmed.*