## GENERAL ELECTRIC CO. v. RAILWAY ELECTRIC LIGHT & POWER CO.

(Circuit Court, D. New Jersey. August 1, 1899.)

PATENTS— VALIDITY AND INFRINGEMENT—ELECTRIC RAILWAY CONTACT DEVICES.
The Anderson patent, No. 412,155, for an improvement in electric railway contact devices, consisting substantially in interposing metallic spring brushes between the forks of the trolley arm and the hub of the contact wheel, so as to encircle the spindle and bear upon the end of the hub, for the purpose of transmitting the current from the wheel to the trolley arm, construed, and *held* to show meritorious and patentable invention over the prior devices of the Heysinger patent, No. 359,607, and the Vandepoele patents, Nos. 396,310, 397,451, and 408,638; and also *held* infringed.

This was a suit in equity by the General Electric Company against the Rahway Electric Light & Power Company for alleged infringement of a patent for improvements in electric railway contact devices.

F. H. Betts and L. F. H. Betts, for complainant.
Charles E. Mitchell and R. C. Mitchell, for defendant.

KIRKPATRICK, District Judge. This is a suit in equity for an infringement of letters patent of the United States, No. 412,155, granted to Albert Anderson, and dated October 1, 1889. The bill prays for an injunction and accounting. The invention relates to that type of electric railways where the current is supplied to the car from a conducting wire suspended above the roadway, the electrical connection between the overhead wire and the car being maintained by means of a traveling contact device generally known as a "trolley." The trolley in general use consists of a long arm reaching upward from the car, upon which it is hinged or pivoted, to the overhead conducting wire, with the under side of which it makes contact by means of a wheel or roller journaled between forks on the outer end of the trolley arm. The invention of the patent in suit more particularly relates to certain metallic conducting brushes intervening between the end of the trolley wheel and the frame or fork in which the wheel is journaled for the purpose of maintaining a good electrical connection against them. These brushes are strips of spring copper, or other good electrical conductor, attached at one end to the trolley fork. At the other end, which is free, they bear with spring pressure on the end of the trolley wheel hub at a point between the said hub and the embracing frame or fork, and are so constructed that they embrace the shaft or spindle on which the trolley wheel revolves, and thus make contact against the entire end section of the wheel hub. This contact brushing device, which takes the electric current from the end face of the trolley hub, and furnishes a means of passage through the trolley pole, and eventually to the car motor, is the specific part of the invention in suit. It is set out in the eighth claim of the patent in suit as follows: "The combination with a trolley frame and trolley wheel of metallic conducting brushes, $g^2$, between the hubs of the trolley wheel and the said frame, to operate substantially as described." The defenses set up by the answer are lack of invention and complete anticipation, lack of patentable novelty in view of the prior art, and noninfringement on the part of the defendant.

An examination of the drawings, specifications, and claims of the patents cited by the defendant as being anticipatory of complainant's device reveals little that is pertinent to this suit. For the most part they have no relation to electric trolley contact devices, but deal in general with mechanisms for making electric contact between any rotating and stationary bodies by means of metallic spring conductors extending from the one to the other. Of those relating to trolley devices for electric railways it will only be necessary to consider the patent granted to Heysinger, No. 359,607, dated March 22, 1887, and those to Vandepoele, numbered 396,310, 397,451, 408,638, and dated, respectively, January 15, 1889, February 5, 1889, and August 6, 1889. The Heysinger patent is for a trolley running in an underground conduit, while those to Vandepoele relate to devices for trolleys running overhead in contact with electrically charged conductors. The

Heysinger device, shown in drawing 5 attached to the patent, consists of a trolley arm terminating in a forked frame, between the ends of which on the pin or shaft, W, the trolley wheel revolves. This wheel is so arranged as to engage and make contact with the underground conductor. The particular form of trolley wheel or roller claimed and shown is made in two parts. Each part is a disk of metal perforated in the middle, and with flanges to form a hub around these perforations, whereby to insure steady running on a small shaft inserted through them. The outward edges of these disks or rollers are also flanged, one upwardly and the other downwardly, so that they will form a grooved periphery and contact surface, in which the conductor may lie. The two sections of this split trolley are held together and are kept in pressing contact with the conductor by means of a light spiral spring inserted between one side of the trolley fork and the surface of one of the loose revolving halves of the trolley wheel. The only function of this spring, V, is to keep the two contact disks together, and give them gentle pressure upon the conducting cable. This alone is what is specified for it in the patent. There is nothing similar either in the purpose, construction, or use of the complainant's spring contact, g², and the Heysinger spring, V. They are only alike in that they are springs. In the Vandepoele patent, No. 396,310, the means employed for collecting the current from the rolling trolley contact wheel and conducting it to the trolley frame and arm, so that it may efficiently pass to and actuate the motor below, is relied upon as an anticipation. To collect and conduct the electric current, Vandepoele in this patent provides metallic spring fingers, one end being in contact with either the periphery or exterior lateral surface of the rolling contact wheel, and the other in metallic connection with the side plates or frame carrying the trolley wheel. By this means he seeks to obtain ample continuous conducting surface without necessitating its passage through the bearing of the contact wheel. This he no doubt accomplishes, but in so doing he has not anticipated the Anderson device. It is true, his object was to make electrical contact between a rotating and stationary body, but that alone was not the object of the Anderson patent. Devices accomplishing this broad purpose had been patented long before Vandepoele's attempt. There were particular results accomplished in and by the Anderson device that the Vandepoele design neither meant to nor could do. Apparently Vandepoele did not recognize the importance of certain peculiarities necessary to be observed in order to have a proper construction and placing of this contact spring on a trolley, and in failing to recognize them made no provision for improvements which such knowledge might have suggested. This is wherein Anderson differed from his predecessors. He observed certain defects, and successfully tried to remedy them. He made valuable improvements in the art as it then existed. These improvements are not anticipated by this Vandepoele device, as can be clearly seen by an examination of the drawings describing it. What has just been said in regard to this Vandepoele device is equally applicable to the devices set out in the other two patents to which reference has been made. In the patent No. 397,451 nothing

whatever is said concerning a spring contact for carrying electric current from the trolley wheel to the trolley arm. The only suggestion given that such might have been intended in this device is that in Fig. 3 of the drawings a diagram of a spring is shown, which might, perhaps, be used for such a purpose. However, this is only conjecture, and no evidence is given that such a spring was so used. But, whatever the use of the spring shown in the diagram may have been, it is not so placed or constructed that it can for any reason be considered an anticipation of the Anderson device. It is not in any particular an embodiment of Anderson's intended improvement to the art, and is therefore without weight in considering the patentability of Anderson's device. It needs but a careful observation of the apparatus set out in the remaining Vandepoele patent, No. 408,-638, combined with a knowledge of what the requisites for a successful contact device are, and an understanding of the improvements sought by Anderson and allowed by his invention, to have it apparent that there is much difference between Vandepoele's contact device and the Anderson combination. There are differences in structure and arrangement of the two devices. The spring force is differently applied, the shape of the contacts different, as well as the point of contact between the trolley wheel and the contact devices. The want of similarity becomes more evident when we understand the needs of the art, what Anderson by his peculiar construction and improved contact arrangement did, and wherein the Vandepoele device failed.

Let us consider some of the requirements of a satisfactory trolley spring contact device. For proper working, the spring brush must transmit without the slightest interruption a current of electricity of great power, without occasioning any arc between the wheel or spring contact or trolley frame or shaft. If the contact device be so constructed that there are any small or exposed projecting parts, these parts are certain to be hit by the arc, and fused or damaged, or be stripped off by the wire when the wheel becomes derailed and flies up beyond the conductor under the influence of the force exerted by its operating spring. The brush must also bear on the wheel with sufficient pressure to maintain the electrical contact, and keep the surface clear of dirt and corrosion, while it shall not have sufficient pressure to become heated by friction, or interfere with the free, smooth movement of the wheel. It must have a sufficient area of contact to transmit the current under all possible conditions of service. It must be fully protected against stray arcs and against mechanical injury during shipment, during its running through switches, or when the wheel is derailed. It must also be maintained in position against the hub of the wheel despite any drag or twisting tendency. The protection of the brushes is of particular importance. To illustrate: In an ice storm there is a continuous play of the arc around the wheel, and, if it strikes the spring of the brush, it at once draws its temper, and renders it useless. The location of the brush is not only important for their protection, but also for the purpose of contact without causing frictional injury to the spring or wheel under the high speed of operation. It must not retard the

wheel movement.    In these respects the trolley contact devices prior to Anderson's were of unsatisfactory construction.    Heated journals, melted and untempered springs, broken contact devices, inefficient contact surface, and general lack of adaptability to the work required were some of the problems to be solved by Anderson in his effort to produce a successful contact.    How does Anderson's apparatus eliminate these defects in prior machines?    First, the spring, $g^2$, is held in place by the rivet at one end and by the eye embracing the spindle at the other.    Hence there is no danger of these springs being bent outwardly, and thereby fail to bear on the hub of the trolley, or so as to come in contact with a switch box or any external object.    It is confined simply and securely in its proper position between the hub of the trolley and the frame.    Moreover, the spring contact does not bear on the periphery of the wheel, nor yet on the periphery of the hub, but on the end of the hub, whereby there is a minimum of speed of the wheel on the brush, and a minimum degree of retarding action of the brush on the wheel.    Likewise the area of contact is a flat surface, not a cylindrical one with a tangential brush thereon.    The brush adjusts itself constantly to this surface, and the range of play of the extremity of the brush is very small.    The contact surface cannot be roughened by arcs, as would be the case of a spring bearing on or near the periphery of the wheel.    By reason of its location between the hub of the wheel and the frame, the springs are protected against all mechanical or electrical injury.    The springs, not being exposed, do not get bent back or stripped off.    They cannot be injured by striking the sides of the switch or crossing boxes, nor by coming in contact with cross wires when the trolley is derailed.    Electrically speaking, they are absolutely protected against injury by arcs, since no arc generated around the trolley would take the path of the contact springs.    It follows from what has been said that the specific combination devised by Anderson and set out in the claim in suit is both novel and possessed of great utility.    There was nothing in the teaching of the prior art that rendered this combination obvious to one skilled therein.    The prior patents do not teach that the spring should be located and arranged in a protected position between the frame and the end of the wheel hub.    It was rather the obvious thing to locate the conducting brushes or springs upon the outside of the trolley frame, and be so arranged that they should not bear against the end of the hub of the trolley wheel.    Anderson, by the combination of the claim of the patent in suit, departed from the teachings of the prior art, and did exactly what was not the obvious thing.    The fact that his combination was so successful, and so well overcame the difficulties which had stood in the way of making a satisfactory contact device, while yet so at variance with the ideas embodied in previous patents, and that the principle has been followed by late inventors, seems to be satisfactory evidence that it required invention.    In my opinion, the claim of the patent is valid.    Does the defendant infringe?    The defendant's device consists of a Y-shaped trolley head connected at the end by a small shaft or spindle. On this shaft or spindle, and between the ends of the trolley arm, a trolley wheel or roller rotates to collect current from an overhead

conductor. For the purpose of carrying the electric current from the wheel or roller to the trolley arm, there are two metallic contact springs located between the ends of the roller and the trolley arm, pressing one against each end section of the roller, and embracing the shaft on which the roller revolves. These springs have one end in metallic connection with the sides of the trolley frame and the other in electrical contact with the end or face of the hub of the roller or contact wheel. It will be perceived that the defendant's device embodies the elements and combination of claim 8 of the Anderson patent in suit, No. 412,155.

Element for element, the defendant's apparatus and complainant's device are alike. Each has the rotating trolley wheel or roller, both having the same function. Each has the forked trolley arm supporting on a shaft between their ends the rotating trolley wheel or roller. Each has the metallic spring contact electrically connecting the rotating wheel and the trolley arm, and in each this spring contact is located between the ends of the wheel hub and the trolley fork making contact against the hub face or end section of the trolley or roller, and embracing the shaft or spindle in which the roller rotates. The defendant's device offers the same relative parts of its roller as a contact surface to the spring contact as does the complainant's device, and it has the same kind of spring contact-making connection with said surface, and similarly carrying current to the trolley arm. In my opinion, the contact devices are alike in purpose and construction, and the elements and combination of the one are the elements and combinations of the other. There should be a decree for complainant.