### STAR BRASS WORKS v. GENERAL ELECTRIC CO.

(Circuit Court of Appeals, Sixth Circuit. July 2, 1901.)

No. 984.

1. PATENTS—INVENTION—EVIDENCE OF COMMERCIAL SUCCESS.

Where, in the device of a patent, the departure from former means is small, yet the change is important, the doubt as to whether the inventive faculty has been exercised is to be weighed in view of the fact that the device in question has displaced others which had previously been employed for analogous uses, and this may decide the issue in favor of invention, especially where other inventors, of experience and skill in the art, had unsuccessfully attempted to solve the problem presented.

2. SAME—ELECTRIC RAILWAY TROLLEYS.

The Anderson patent, No. 412,155, for improvements in trolleys for electric railway service, claim 8, which covers the combination with a trolley wheel of metallic conducting brushes between the hubs of the wheel and the frame, the purpose being to provide a conductor which should be within the frame, and thereby protected from external injury, and also to prevent the current from passing through and destroying the lubricant upon the journal of the wheel, must be conceded to show invention, in view of the immediate adoption and wide use of the device, although the elements of the combination were old and well known in other branches of the electrical art. Such claim also *held* infringed.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

Fred L. Chappell, for appellant.

James R. Sheffield and F. L. Betts, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. This case involves the validity of the eighth claim of the Anderson patent, No. 412,155, for improvements in trolleys for electric railway service. A consideration of the record in this cause shows that with the advent of the under-running trolley, now in common use in propelling street cars, there arose the necessity of devising a means by which the current of electricity could be readily and safely transmitted from the conducting wire down the swinging arm of the trolley, thence to the motor beneath the cars. The top of this swinging arm had been provided with a frame or harp within which was the trolley wheel held in contact with the transmitting wire by the pressure exerted by the spring attached to the opposite end of the trolley pole at the top of the car. The electrical current in the propulsion of the car passes from the wire to the wheel, thence to the frame or harp, and down the trolley pole. It was found in practical operation highly necessary to accomplish this purpose in such manner as to prevent in-

jury to the wheel and connecting devices by "arcing" when the wheel was for any cause off the wire, and from mechanical injury in coming in contact with switches, etc., in the operation of the cars. It was also demonstrated that the electrical current, in passing through the lubricant upon the journal of the wheel, was retarded in its transmission, and the lubricant itself destroyed. It was desirable, therefore, to conduct the current by some means which would protect the apparatus and avoid passing the current through the lubricant. Anderson, in his eighth claim, states his invention to be: "The combination with a trolley frame and trolley wheel of metallic, conducting brushes, $g^2$, between the hubs of the trolley wheel and said frame, to operate substantially as described." The means of accomplishing this result are shown to be in the location of the contact spring or brush within the trolley harp in such wise as to cause the least friction and consequent retarding of motion. That this device has merit as a practical solution of the problem is demonstrated in the fact that upon its production it went into immediate use, and has remained from that time to this the practical arrangement of brush and harp in general use upon the street railway systems of the country. It is urgently insisted that the alleged improvement of Anderson is only such a step forward as a mechanic skilled in the art would readily take, and that there is, consequently, no patentable novelty in the improvement in question. This brings up for consideration the often-mooted question as to whether an alleged inventor has crossed the shadowy line which divides mere mechanical advance from meritorious invention. It must be conceded that others had preceded Anderson in the field upon which he entered in making the improvement in question. Brushes for making contact in the transmission of a current are old and well known. Such spring brushes as Anderson uses had long been in common use on electrical machines. They are often seen in connection with dynamo electric machines and electric motors. We do not deem it necessary to review the patents showing these constructions. It may be that, broadly speaking, these inventions are in the electrical art; but the particular art with which the inventor was dealing in this case had to do with the construction of a successful means of transmitting electricity in the operation of cars by means of a trolley. Mr. Van Depeole, who is said to have invented the under-running trolley, and to be a man of capacity in this field of mechanics, essayed the solution of the problem more than once. In his patent No. 396,310, issued January 15, 1889, he shows a device for transmission of the electrical current consisting of metallic spring fingers, one end being in contact with the periphery of the wheel, the other connected with the frame carrying the wheel. By this method the current is transmitted without passing through the lubricant, but the defects in the apparatus are now apparent. The contact is made by the fingers upon the lateral surfaces of the wheel, causing friction. The springs are all on the outside of the harp in a position rendering them liable to be destroyed or injured in the operation of the trolley. In his patent No. 408,638, of August, 1889, Mr. Van Depeole shows another mechanism having the same purposes in

view. He here shows two hinged pieces or blocks bearing upon opposite sides of the hub, held together by a small spring of coiled wire at the top. Experience showed this mechanism to be objectionable in the constant breaking of the spring at the top, it being exposed to arcs, and liable to be injured in operation, and making poor contact between the shoes and the wheel. With this much accomplished in the solution of the problem, Anderson, using a brush in common use in electrical appliances, places it entirely within the frame, where it is protected, serving the purpose intended with the least possible friction as the spring bears upon the end of the hub, and not upon the wheel or the periphery of the hub. Is this invention, or only the obvious improvement which would suggest itself to a mechanic skilled in the art? It is too well settled to need extended citation of authorities to support the proposition that a new combination of elements old in themselves, producing a new and useful result, entitles the inventor to the protection of a patent. Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177. It may be true that Anderson has only taken the familiar contact spring or brush, and placed it in a protected position, but this change seems to have made the difference between a defective mechanism and a practical method of attaining the desired end. Where, as in this case, the departure from former means is only small, yet the change is important, the doubt as to whether the inventive faculty has been exercised is to be weighed in view of the fact that the device in question has displaced others which had previously been employed for analogous uses, and this may decide the issue in favor of invention. Krementz v. Cottle, 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558; Consolidated Brake Shoe Co. v. Detroit Steel & Spring Co. (C. C.) 47 Fed. 894. It is a fact entitled to serious consideration in determining whether Anderson's improvement was so obvious as to be one which would occur to a mechanic skilled in the art that Van Depeole, with his conceded skill, did not attain the desired end. His mechanisms were faulty in exposing the brush to injury and retarding the wheel in operation by friction. Anderson's device does away with the objectionable features of Van Depeole in so satisfactory a manner that it was at once adopted, and has remained in general use. His change seems simple enough now, but it was the first to combine comprehension of the problem to be solved with a practical arrangement of parts for its solution. This entitles his advance to the merit of invention. The result is new in furnishing a brush of practical utility protected in operation. Its usefulness is demonstrated in its wide-spread adoption and use. We therefore reach the conclusion that Anderson's improvement rises to the dignity of invention, entitled to the protection of the patent law. The infringement of complainant's invention is obvious. The change from a circular end of the brush to one with a fork is merely colorable. The Anderson patent is not for the form of the brush, but is a combination patent, in which the location of the brush is the leading conception.

We find no error in the decree of the circuit court, and the same will be affirmed.