GENERAL ELECTRIC CO. v. INTERNATIONAL SPECIALTY CO.

(Circuit Court of Appeals, Sixth Circuit. November 3, 1903.)

No. 1,186.

1. PATENTS—CONSTRUCTION OF CLAIMS—REFERENCE TO SPECIFICATION.
   The words, "to operate substantially as described," at the end of a claim, do not import into the claim elements described in the specification; but not mentioned in the claim, for the purpose of either extending or limiting it.

2. SAME—INFRINGEMENT—ELECTRIC RAILWAY TROLLEYS.
   The Anderson patent, No. 412,155, for improvements in electric railway trolleys, claim 8, which covers the combination with a trolley frame and wheel of metallic conducting brushes between the hubs of the wheel and the frame, "to operate substantially as described," is not limited to a structure in which the bearings of the wheel are insulated so that the entire current is carried through the brushes, although such a construction is described in the specification, the brushes being operative without such insulation. The claim construed, and *held* valid and infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

Frederic H. Betts and James R. Sheffield, for appellant.

James Whittemore, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. The question involved in this case is the construction and application of the eighth claim of the Anderson patent, No. 412,155, for improvements in electric railway trolleys, the validity of which was sustained by this court in the Star Brass Works v. General Electric Co., 111 Fed. 398, 49 C. C. A. 409. This claim reads as follows:

"(8) The combination, with a trolley frame and trolley wheel, of metallic conducting brushes, G2, between the hubs of the trolley wheel and the said frame, to operate substantially as described."

In a suit for infringement brought by the appellant (complainant below) against the appellee, the court below denied the injunction and dismissed the bill, holding, first, as matter of fact, that in the defendant's structure the metallic conducting brushes do not bear upon the hubs of the trolley wheel, but are "placed between the trolley frame and the end of the journal or bearing of the trolley wheel"; and, second, as matter of law, that the invention described in the eighth claim is limited to a combination in which the trolley wheel is provided with a nonmetallic insulated bearing, by reading into this claim a part of the specification of the patent.

1. It is difficult to understand how the court below reached the conclusion that the conducting brushes of the defendant bear upon the ends of the axle or journal and not upon the hubs. We have inspected the defendant's structure as submitted in the exhibit accompanying the record, and it clearly appears that the brushes bear upon the hub, and not upon the ends of the journal or axle. This is also apparent from an examination of the following illustrations, one showing a perspective view of the trolley harp and conducting brushes, which we held to be an infringement in the Star Brass Works Case, and the other showing a similar view of those of the defendant in the present case.

PERSPECTIVE OF
SECOND FORM
OF
STAR BRASS TROLLEY HARP & CONTACT BRUSHES.

PERSPECTIVE VIEW OF DEFENDANTS TROLLEY HARP AND CONTACT BRUSHES.

The structural identity of the conducting brushes of the defendant with those patented by Anderson is borne out by the testimony of the defendant's expert, who said:

"Except for the possibility of sparks produced by the end movement of the trolley in relation to its frame, no connecting brushes are needed in the defendant's device, and in being employed they perform the function solely of the ordinary spring contact or spring washer, to provide a means which will give a constant metallic bearing upon the wheel, so that its end movements in its travel will not cause arcs to spring between the wheel and frame."

To perform the function thus claimed by the defendant, these so-called "contact springs" bear, and must bear, against the hub of the wheel. They must also serve as conductors of the electric current from the hub to the frame in order to prevent arcs from springing between the wheel and frame when the wheel wobbles or moves side-wise upon its axle.

2. The improvement in trolleys described by Anderson in the specification of his patent included a trolley wheel with a detachable rim, an insulated bearing for the wheel, a sheet metal harp or frame to hold the wheel, and conducting brushes between the hubs of the wheel and the frame, placed inside the frame in a protected posi-

tion. The first seven claims cover the trolley wheel with detachable rim, the insulated bearing, and the metal harp or frame. The eighth claim is limited to the metallic conducting brushes between the hubs of the wheel and the frame. Contact springs or brushes had been used in the electric art before Anderson took out his patent. We held in the Star Brass Works Case that the merit of Anderson's invention consisted in taking this familiar contact spring or brush and placing it in a protected position where it was secure from injury through the operation of the trolley, and, by bearing upon the ends of the hub instead of the periphery of the hub or wheel, materially reduced the friction in operation. We did not in that case hold, nor did we deem it necessary to hold, that the use of the insulated bearing for the trolley wheel was a necessary part of the invention covered by the eighth claim; but, on the contrary, held that the device of the defendant infringed the eighth claim, although, in point of fact, the journal used in that device was not insulated. The defendant's device in the present case is essentially the same as that which we had held to be an infringement in the Star Brass Works Case. The conducting brushes are metallic, they bear upon the ends of the hub, and not the periphery of the hub or wheel, connect it with the trolley harp or frame, and are placed in a protected position within the harp or frame. But the point has been made and sustained by the court below that, since the defendant does not use an insulated spindle or bearing, and since the electric current may pass wholly or partly from the wheel through the bearing to the frame, there is no infringement. The device of Anderson, said the court below, was one in which the spindle or bearing was insulated, and the conducting brushes carried the entire electric current from the trolley wheel to the frame. The court reached this conclusion by a construction of the words "to operate substantially as described" used in the eighth claim. These words, the court thought, imported or read into the eighth claim the portion of the specification describing the insulated bearing. Without this insulated bearing "his [Anderson's] construction cannot operate substantially as described."

We are not able to follow the court in its construction of the eighth claim. As well might it be held that there could be no infringement of this claim unless a trolley wheel with a detachable rim was used. The use of the words "to operate substantially as described" did not serve to read into this claim every element of the entire structure set forth in the specification precisely as described, and thus limit the patentee to the exact mechanism described therein. In Hobbs v. Beach, 180 U. S. 383, 400, 21 Sup. Ct. 409, 45 L. Ed. 586, Mr. Justice Brown, speaking for the court, says that the construction of the words "substantially as described or set forth," used in the claim, "which would limit these words to the exact mechanism described in the patent, would be so obviously unjust that no court could be expected to adopt it." In the case of Penfield v. Potts & Co. (decided by this court this term) 126 Fed. 475, the attempt was made to help out a claim by reading into it certain features of the machine described in the specification, but not included in the claim by apt words. We held this could not be done, referring to the cases and

quoting, among other language, that of Mr. Justice Brown in Mc-Carty v. Lehigh Valley R. R. Co., 160 U. S. 110, 116, 16 Sup. Ct. 240, 40 L. Ed. 358, where he said:

"While this may be done with a view of showing the connection in which a device is used, and proving that it is· an operative device, we know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement."

In other words, reference may be made to the specification to explain but not to extend or limit the claim. The words "to operate substantially as described" mean "substantially as described in regard to the combination which is the subject of the claim." Lake Shore Ry. Co. v. Car Brake Shoe Co., 110 U. S. 229, 235, 4 Sup. Ct. 33, 28 L. Ed. 129. If the conducting brushes between the hubs of the wheel and the harp or frame operate substantially as described, that is all that is necessary.

The use of the words "to operate substantially as described" no more require the wheel to turn upon an insulated bearing than to run upon a detachable rim. As practically used, the Anderson trolley wheel does neither, and yet the conducting brushes used in connection with it do operate substantially as described in the patent. They carry the electric current from the trolley wheel to the frame, and they do this whether the bearing is or is not insulated. They may carry more current when the bearing is insulated than when it is not. But whether the bearing is purposely insulated or not, the testimony shows, and we commented upon this fact in the Star Brass Works Case, that the use of the lubricant upon the journal retards the free transmission of the current from the wheel to the journal and the frame, and thus partially insulates the bearing. The object of the use of conducting brushes, as stated in the patent, is "so that the electric current may readily pass from the conductor, W, through the trolley wheel, thence along the brushes, G2, to the trolley frame, and thence in the usual manner to the motor on the car." So that, whether the spindle or bearing be wholly insulated, as described in the patent, or partially insulated by the lubricants used, in either event the conducting brushes, located as described, serve the purpose of passing the electric current readily from the wheel to the frame, and thus "operate substantially as described." They perform this function in the defendant's device; indeed, the object for which the defendant says he uses the conducting brushes, namely, to prevent arcs caused by a wobbling wheel, could not be attained except by the use of metallic contact springs affording electric connection between the hub and the frame.

Nothing has been presented to us upon this hearing which would justify a reversal of our holding, in the Star Brass Works Case, that the eighth claim is valid, and, since we are satisfied that there is no essential difference between the defendant's structure and that before us in the Star Brass Works Case, we must sustain the charge of infringement.

The judgment of the Circuit Court is therefore reversed, and the case remanded for further proceedings not inconsistent with this opinion.