STAR BRASS WORKS v. GENERAL ELECTRIC CO.

(Circuit Court of Appeals, Sixth Circuit. July 6, 1904.)

No. 1,317.

1. PATENTS—INFRINGEMENT—ELECTRIC RAILWAY TROLLEYS.

The Anderson patent, No. 412,155, for an improvement in electric railway trolleys, claim 8, which covers the combination with a trolley frame and wheel of metallic conducting brushes or contact springs between the hubs of the trolley wheel and the frame does not make the copper washer mentioned in the specification and optionally used on the end of the hub a part of the contact spring, but it is merely an extension of the hub. An essential feature of the claim is the placing of the spring or brush inside the frame for protection, and it is not infringed by the device of the Crockett and Johnson patent, No. 690,639, in which the spring is placed in a recess on the outside of the frame, making contact with the hub through heavy washers having lugs extending through the frame.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

See 109 Fed. 950; 129 Fed. 102.

Fred L. Chappell, for appellant.
Betts, Betts, Sheffield & Betts, for appellee.

Before LURTON, SEVERENS and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit for an infringement of the eighth claim of the Anderson patent, No. 412,155, for an improvement in trolleys for electric railway service. It comes here on appeal from a decree holding there was an infringement, granting an injunction, and directing an accounting.

The claim involved is for "the combination, with a trolley frame and trolley wheel, of metallic conducting brushes, $g^2$, between the hubs of the trolley wheel and the said frame, to operate substantially as described." It has already been twice before this court. Its validity was sustained in Star Brass Works v. General Electric Co., 111 Fed. 398, 49 C. C. A. 409, and it was further construed and enforced in General Electric Co. v. International Specialty Co. (C. C. A.) 126 Fed. 755. In the opinions in these cases the invention is described, and its patentable merits indicated. In both cases the metallic conducting brushes mentioned in the claim were presented by counsel and treated by the court as the contact springs, placed between the hub and the frame, which, bearing upon the former and attached to the latter, serve to conduct the electric current from one to the other. It was the location of these contact springs, inside the frame, and pressing upon the ends of the hub, which gave merit to the claim. So placed, they were not exposed to arcs, were protected from mechanical injury, and served the purpose of conducting brushes with the least possible friction. In the first case we said:

"Anderson, using a brush in common use in electrical appliances, places it entirely within the frame, where it is protected, serving the purpose intended with the least possible friction as the spring bears upon the end of the hub, and not upon the wheel or the periphery of the hub. * * * It may be true that Anderson has only taken the familiar contact spring or brush, and placed it in a protected position, but this change seems to have made the difference between a defective mechanism and a practical method of attaining the desired end. * * * The Anderson patent is not for the form of the brush, but is a combination patent, in which the location of the brush is the leading conception." 111 Fed. 398, 400, 49 C. C. A. 409.

In the second case we said:

"Contact springs or brushes had been used in the electric art before Anderson took out his patent. We held in the Star Brass Works Case that the merit of Anderson's invention consisted in taking this familiar contact spring or brush and placing it in a protected position, where it was secure from injury through the operation of the trolley, and, by bearing upon the ends of the hub instead of the periphery of the hub or wheel, materially reduced the friction in operation." 126 Fed. 755, 758.

The same view was taken by Judge Kirpatrick in General Electric Co. v. Rahway Electric Light & Power Co. (C. C.) 96 Fed. 563, in which, after describing the necessity of protecting the contact device against stray arcs and against mechanical injury during shipment or while in operation, he says (page 567):

"How does Anderson's apparatus eliminate these defects in prior machines? First, the spring, $g^2$, is held in place by the rivet at one end and by the eye

embracing the spindle at the other. Hence there is no danger of these springs being bent outwardly, and thereby fail to bear on hub of the trolley, or so as to come in contact with a switch box, or any external object. It is confined simply and securely in its proper position between the hub of the trolley and the frame. Moreover, the spring contact does not bear on the periphery of the wheel, nor yet on the periphery of the hub, but on the end of the hub, whereby there is a minimum of speed of the wheel on the brush and a minimum degree of retarding action of the brush on the wheel."

It does not appear that in either of these cases any attention was paid by counsel or court to the copper discs or washers, which, for the apparent purpose of reducing the friction and wear on the contact spring or conducting brush, it is stated in the specification the applicant prefers to add "at the ends of the hubs." The patent itself treats these copper discs or washers as quite distinct from the metallic conducting brushes. The copper discs are marked "g," the metallic conducting brushes "g²," and it is stated in the specification that "the copper or other equivalent brushes, g²," bear against the outer sides of the copper discs when these are added at the ends of the hubs. The copper discs may or may not be used, and, if used, are treated as added at the ends of the hubs; in other words, as an addition to the hubs. The conducting brushes bear either against the ends of the hubs or against the outer sides of the washers when these are added to the hubs.

In the former cases in this court counsel for the patent treated the metallic conducting brushes as the patent does—as contact springs, bearing against the ends of the hub or the washers (if they are used), and protected by being placed between the hub and the frame. The leading expert for the patent said in the first case: "It is beyond question that for many years such brushes, g², have been given a uniform pressure upon the hub of the trolley wheel or the copper washer, g, sufficient for all practical purposes." And counsel themselves stated in their brief that the testimony proved beyond doubt that the conducting brushes of complainant's device were spring brushes; that they bore evenly, and for all practical purposes, over substantially the whole surface of the washer of [or] the ends of the trolley wheel hub. In their brief in the second case they submitted an illustration of a view in perspective of the second form of the Star Brass trolley harp and contact brushes held to infringe in the first case, which was reproduced in the opinion in the second case. 126 Fed. 756. In this the washer and conducting brush are designated as separate and distinct pieces. The brush is marked "Spring Conducting Brush," the top of the brush is marked "Top of Brush Bearing on Washer," while the washer is marked "Washer Bearing on End of Hub." In both the former cases the contact or "business end" of the conducting brush or contact spring was placed between the hub and the frame, and bore either against the end of the hub or the washer. The alleged infringing device contains no contact spring located between the hub and the frame. The contact spring is forked, and is placed on the outside of the frame or harp, being countersunk or recessed therein. Connection with the hub is secured through a "massive" washer having lugs which extend through slots in the frame. The forked spring outside the frame presses upon these lugs, forcing the

washer against the hub inside. The court below took the view that the defendant had taken the conducting brush of the Anderson patent and divided it into two parts, a spring and a washer; the spring technically outside the frame, but really protected by it, and the washer, which constituted the contact part or "business end" of the brush, located between the hubs and the frame, constituting a mere colorable modification of Anderson's device.

It is no doubt true that when a washer is placed between the hub and the spring, the current must pass from the hub through the washer before it reaches the spring, and therefore in one sense the washer is a part of the conducting device; but in another it is a mere addition to or extension of the hub, and the patent so treated it. The claim was not based upon the location of the washer. The washer might or might not be used. It was based upon the location of the brush or spring which pressed against the hub or washer and carried the electricity to the frame. The washer needed no protection, but the brush or spring did. Judge Kirkpatrick, in his opinion, pointed out the need of protecting the contact end of the brush, which bore either upon the washer or the hub. This spring, a delicate thing, placed outside, was liable not only to be injured by violent contact with other objects, but to be destroyed by stray arcs, and Anderson therefore placed it inside.

The defendant's device, which is covered by a patent to F. P. Crockett and O. P. Johnson, being No. 690,639, places the spring on the outside of the harp. It is protected against injury from without by being placed in a deep recess, and against injury from within by the intervening frame. A patent for protecting a spring by locating it on the inside of the trolley harp is not infringed by placing it in a recess on the outside, any more than a patent for protecting it by countersinking it on the outside is infringed by locating it wholly on the inside. Although the result may be the same, the device is different, and the patent covers only the device.

If the contact spring in the defendant's device, corresponding with the metallic brush of the complainant, is not located between the hubs and the frame and protected by being entirely within the latter, is the fact that the spring presses upon the lugs of the washer, which contacts with the hub inside the frame, in itself sufficient to constitute an infringement? The eighth claim of the Anderson patent was a narrow one, and we sustained it not simply upon the ground that the electric current was taken from the wheel at the hub, but upon the ground that the metallic conducting brush, which pressed against the hub or washer, was a spring requiring protection, and was protected by being placed between the hub and the frame, inside the latter. The defendant uses another method of protecting the spring. In our opinion, there is no infringement.

The judgment of the court below is therefore reversed.