CUTLER–HAMMER MFG. CO. et al. v. HAMMER et al.

(Circuit Court, N. D. Illinois, N. D.    March 31, 1903.)

No. 24,965.

1. PATENTS—VALIDITY—EFFECT OF PRIOR DECISION.

The judgment of a court adjudging a patent void, while not conclusive on another court in the same circuit in a suit between different parties, is very persuasive, where the same matters are presented, and unless the reasoning fails to appeal to the judgment of the second court, in view of the new presentation of the case, such judgment should prevail.

2. SAME—INFRINGEMENT—ELECTRIC MOTORS

The Blades patent, No. 418,678, for an electric switch for motors, was not anticipated by the Walter patent, No. 373,034, the two devices being designed to accomplish different ends, nor by anything in the prior art, but discloses patentable novelty, and is valid.    Claims 1 and 4 construed, and *held* infringed.

In Equity.    Suit for infringement of letters patent No. 418,678, for an electric switch for motors, granted to Harry H. Blades January 7, 1890.    On final hearing.

Jones & Addington (W. Clyde Jones and Keene H. Addington, of counsel), for complainants.

Parker & Carter (Donald M. Carter, of counsel), for defendants.

KOHLSAAT, District Judge.    The bill herein was filed to restrain infringement of claims 1 and 4 of patent No. 418,678, which read as follows, viz.:

"(1) In a shunt-wound electric motor, the combination, with the field circuit, of a magnet in the said circuit, a hand switch adapted to open and close the armature circuit, said switch arranged to be held in its closed position by the magnetism of the said magnet, and means for automatically retracting the said switch to its initial position when the magnet is de-energized by the cessation of the current through the field circuit, substantially as described."

"(4) In a shunt-wound electric motor, the combination, with the field circuit, of a magnet in said circuit, a hand switch adapted to open and close the armature circuit, said switch arranged to be held in its closed position by the magnetism of the said magnet, and a spring for automatically retracting the said switch to its initial position when the magnet is de-energized by the cessation of the current through the field circuit, substantially as described."

Defendants assert several defenses:    First, that the patent has been pronounced void in this circuit for want of patentable novelty; second, that pending the issuance of the patent the patentee made such changes in his application as to make the patent void; third, that the patent is void for want of patentable novelty—citing the following patents: Ways, 29,533; Pope, 126,486; Reed, 237,776; Brush, 224,-511; Edison, 251,555; Weston, 264,979; Same, 264,980; Same, 301,-027; Same, 301,028; Same, 264,983; Wightman & Lemp, 367,082; Same, 301,228; Edison, 251,541; Stevens, 316,076; Thompson, 335,-547; Van Depeole, 347,903; Knight, 338,085; Mordey & Watson, 12,982 (British); Menges, 181,115 (French); Walter, 373,034; Baxter, 449,660; Whittingham, 396,791; Shepardson, 389,254; Stockwell, 292,382; Same, 326,603; Davis & Scott, 425,991; Rae, 437,662;

Same, 454,626; Freeman, 290,025; Clark, 404,602; Thomson, 302,-963.

In the case of Detroit Motor Co. v. Jenney Electric Motor Co. (C. C.) 84 Fed. 180, relying mainly upon the Walter patent, No. 373,-034, the court holds that the claims here in suit are void for want of patentable novelty. It is urged that the decision in that case is res adjudicata, and, failing that point, this court should, by way of comity, concur in that decision. In view of the difference of parties in the suit at bar and the former suit, I do not consider the claim of res adjudicata sustainable. As to comity, the judgment of another court upon the same subject-matter is of great weight, wherever the same matters are presented in substantially the same manner. As the authorities express it, "they are very persuasive." Unless, therefore, the reasoning of the court or the presentation of facts in such case fail to appeal to the judgment of the court, in view of the new presentation of the case, such judgment should prevail.

The Walter patent relates to a means for starting motors or generators from a distant point. It shows a self-starter, with a pulling magnet located in the shunt-field circuit, designed to attract the contact arm, operating in the armature circuit, from the so-called off position to the so-called on position, when energized, thus leaving the arm in the off position until the shunt-field circuit is fully energized. The tendency of the arm to move to the magnet precipitately when once the power of the magnet is felt is overcome by a plunger working in a dash pot as shown. The resistance is thus cut out automatically and gradually. When the shunt-field circuit is demagnetized, the arm is released by the magnet and then returned by hand to an off position. It shows no retracting device such as a spring. Manifestly it would require a much stronger magnet to draw the arm to the on position, if there were added to the load of the dead arm the resistance of a spring or other retracting device. Walter does not seem to have had in mind any method for stopping the motor, other than by hand. The Blades patent provides for a manual moving of the arm toward the on position, there to be retained by the magnet in the shunt-field circuit, and then to be returned automatically to the off position by a spring or similar device. The action of the motor in the armature circuit is greatly influenced by the condition of the shunt-field circuit. Thus the experts assert that an increase of speed beyond 10 per cent. by the insertion of resistance in the field circuit of a shunt motor renders the motor inoperative, unpractical, and uncommercial, and that the addition of a spring to the Walter self-starter would increase the speed of a shunt motor from 50 to 80 per cent. We are here dealing with the actual operation of electricity, and accept the fact without ascertaining the reasons. Now, if it be a fact that such is the case, and that the location in the field circuit of a magnet having sufficient size and energy, when magnetized, to draw a contact arm, retarded by a retracting device such as Blades', would seriously affect the vitality of the shunt-field circuit, so as to unduly quicken the action of the motor in the armature circuit, it must follow that Walter purposely omitted the addition of a spring to return the arm to an off position, and left that return to be made by hand. Such, in my judgment, from the testimony, is the fact.

· The court, in the case of Motor Co. v. Motor Co., above cited, holds that the mere addition of a spring to the Walter device, for the purpose of returning the arm to the off position, would not be invention; and in this I concur. But is that the only difference or advance accomplished by Blades? From what I have said, if it be a proper deduction from the evidence, it is evident that the addition of a spring to Walter's device would not have been practicable. It would have worked injury to the motor in the armature circuit, and would not have been commercial. The two devices are for radically different ends. Walter had in view the moving of the contact arm to the on position, and Blades had in mind the automatical moving thereof to the off position. The reverse movement of the arm is accomplished in each case by hand. Considering, therefore, the difference in operation and purpose of the two devices, together with their relation to the shunt-field circuit, and the advantages growing out of the location of the magnet in the shunt field, I am of the opinion that the Walter patent does not anticipate the Blades patent in many of its essential features. None of the other patents cited in said cause cover the principle of Blades' patent, requiring the location of the magnet controlling the contact arm within the shunt-field circuit, with the automatic retracting device and the ends thereby secured. It therefore follows that the court should examine into the merits of the patent in suit, provided there was no such change in the application therefor, pending said application, as to make its issue void. I am unable to, see that any such vital change was so made as to justify defendants' contention in that regard, and will therefore proceed to the merits of the case.

The rheostat and the contact arm are old in the art. Owing to the innumerable causes of accident which beset the economical and careful management of the electrical current for power purposes, the prior art teems with devices designed to provide for and anticipate the same. A mere consideration of the prior art may well lead me to doubt if there is any merit in complainants' contention that the patent in suit is a pioneer patent. It is insisted that by applying the retaining magnet to the starting box, and connecting the same in the shunt-field circuit of a shunt-wound motor, Blades overcame the following dangers to which the shunt motor was subjected, viz.: (1) The accidental opening of the field circuit; (2) the leaving of the contact arm of the starting box in an intermediate position; (3) the re-establishment of the current supply at a time when the starting resistance is removed from the armature circuit.

Formerly it was deemed important that the motors should be so wound as to create a high resistance. This was necessarily followed by various controlling devices. Then low-resistance armatures were found to be practicable. To properly regulate the flow of electricity in these starting boxes, resistance coils are provided, making a gradual letting on of the current in the armature circuit. It was found that for one cause and another there should. be some device for the regulation of the current in case of a cessation of the same and a quick re-establishment thereof, and similar dangers. The Shepardson patent, 389,254, covers a device for the regulation of the current by

automatically opening the same at the main switch. This device places the attracting magnet in series on the motor circuit. The switch is adapted to be closed by hand. The closing of the circuit to the motor causes the current to flow through the magnet, which becomes thus energized to attract the switch arm, when at the on position, and hold it in the closed position. When the magnet is deenergized, it releases the arm, which is then returned to the off position by a retractile spring. It is claimed that the device does not provide against the dangers due to the leaving the contact arm on an intermediate segment. The patentee, at line 75, after describing the operation of the switch, uses the language, "thus breaking the original circuit by removing," etc.; and at line 81, "if the lever, G, is pushed down before the current is restored, it will remain down unless held positively in place." This is repeated at line 33. While no reference is made to a starting box, or rheostat, of the motor, yet I am of the opinion that the result is the same, and that the Shepardson patent does provide against the danger last named.

In the various patents cited in the prior art, the mechanical arrangement of a magnet so as to hold the contact arm when on the on position is anticipated. So, also, is the retractile spring, restoring the arm, when released by the magnet, to the off position. The only advance upon the prior art made by Blades was the location of the device in the shunt-field circuit in such a manner as to provide automatically against accidents in that circuit, and the alleged advantage gained by a slightly retarded release of the contact arm, by reason of the alleged fact that the shunt-field circuit does not respond as promptly to an opening of the main circuit as does the armature circuit. As to this last result, if it is attained, there remains in the mind of the court so much doubt as to utility and desirability that it cannot have any controlling weight in the disposition of the case at bar.

This narrows the inquiry to the locating of the magnet and spring within the shunt-motor circuit to control the arm which contacts with the resistance plates located in the armature or motor circuits in such a manner as to provide automatically against accidents to the field circuit. Blades has taken the shunt motor, the starting box operated by hand, the electro-magnet, and the retractile spring, all old, combined these into a structure, by associating the retaining magnet with a manual starting box and placing the magnet in the shunt-field circuit in such a manner as to produce for the first time an effective and operative result, which seems to automatically overcome the dangers incident to accidents in the shunt-field circuit. Both the combination and result were new. The end attained was most desirable. It has gone into extensive use in a modified form, and defendants have found it to their advantage to use it. The court is of the opinion that it amounted to patentable novelty, and that the patent in suit is valid. Star Brass Works v. General Electric Co., 111 Fed. 398, 49 C. C. A. 409; Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 890, 53 C. C. A. 36.

The infringement is conceded. Complainants are entitled to a decree for an injunction in accordance with the foregoing. Counsel may prepare the same and present it to the court.