### PAUL BOYNTON CO. v. MORRIS CHUTE CO. et al.

(Circuit Court of Appeals, Third Circuit.    April 7, 1898.)

No. 4.

**1. PATENTS—INTERPRETATION OF CLAIM.**

Where it is necessary to construe an ambiguous claim, the specification may be resorted to for the purpose of arriving at a better understanding of its meaning, but this may not be done to ingraft on a perfectly plain claim a restrictive qualification, which the patentee omitted to "particularly point out."

**2. SAME.**

The words "substantially as described" do not warrant reading into the claim, as an additional element, a device mentioned in the specifications merely as a preferred form of construction; and a patentee who has claimed either more or less than was necessary cannot, in a suit for infringement, be relieved from the consequences thereof.

**3. SAME—SPRAY DEFLECTORS.**

When a boat so constructed that its sides will have the form of and operate as spray deflectors would not present patentable novelty, the objection is not overcome by fixing additional boards to it, and then using it as a toboggan as well as a boat.

**4. SAME.**

The Newburg patent, No. 411,255, for an inclined pleasure railway located near a sheet of water, combined with a boat-shaped car or toboggan, adapted, after descending the incline, to enter and float forwardly on the water, and with spray deflectors fixed to its sides, is for mere structural changes of a toboggan car and boat, and did not involve invention. 82 Fed. 440, affirmed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

This was a suit in equity by the Paul Boynton Company against the Morris Chute Company and others for alleged infringement of a patent for improvements in inclined pleasure railways. The circuit

court dismissed the bill, holding that the patent is void for want of novelty and invention (82 Fed. 440), and the complainant has appealed.

P. C. Dyrenforth, for appellants.

Wm. C. Strawbridge and J. Bonsall Taylor, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and BRADFORD, District Judge.

DALLAS, Circuit Judge. The patent for consideration in this case was issued to John P. Newburg on September 17, 1889, and is numbered 411,255. Although five of its six claims are alleged to have been infringed, but three of them have been urged upon the attention of this court, and these are as follows:

(1) "In an inclined pleasure railway, in combination with an inclined way and track which is located or erected near a body of water, a boat-shaped car or toboggan, adapted, when it reaches the foot of the incline, to enter and float forwardly on the water, substantially as described."

(4) "In combination with the boat-shaped car or toboggan, the spray deflectors fixed to its sides, substantially as described."

(6) "In combination with an inclined railway, which may be located near a body of water, a boat-shaped car or toboggan, having runners, J, guard plates, K, and spray deflectors, I, substantially as described."

1. It is not necessary to add anything to the opinion of the learned judge of the circuit court in support of his conclusion that the first claim, if its terms should be regarded as controlling, is void for lack of novelty. This has not been conceded by the appellant, but it has not been very strenuously denied, and we have no doubt about it. It is, however, contended that this claim, though expressly inclusive of any "boat-shaped car or toboggan adapted * * * to enter and float forwardly on the water," should be construed to be exclusive of any such device which is not also "adapted to prevent the shipping of water and splashing of occupants." It is insisted that this limitation may be found in the specification and drawings, and that from them it may be imported into the claim. But we cannot accept either branch of this proposition. We are not at liberty to add to or vary the claim by reference to other parts of the patent, nor is there anything contained in it upon which the amendment desired (if allowable) could reasonably be founded. If interpretation of the claim were requisite, the specification might, of course, be resorted to for the purpose of arriving at a better understanding of its meaning, but this may not be done "for the purpose of changing it and making it different from what it is." White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72. We are asked, not to construe an ambiguous claim, but to ingraft upon a perfectly plain one a restrictive qualification, which the patentee wholly omitted to "particularly point out" when he applied for his patent, and which it is proposed shall now be inserted only because the exigency of the appellant's case demands it. Authority to do this has not been vested in the courts. "The claim is a statutory requirement prescribed for the very purpose of making the patentee define precisely what his invention is, and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms." White v. Dunbar, supra. The words,

"substantially as described," do not warrant the insertion of an additional element in the claim. The combination, as there defined, does not include any provision against splashing, and by no reference to the context can the requirement that an applicant shall "particularly point out and distinctly claim" his invention be evaded. The words "substantially as described" must, therefore, be related to the matter designated (Lake Shore & M. S. Ry. Co. v. National Car Brake-Shoe Co., 110 U. S. 229, 4 Sup. Ct. 33); and a patentee who has claimed either more or less than was necessary cannot, in a suit for infringement, be relieved from the consequences (McClain v. Ortmayer, 141 U. S. 419–425, 12 Sup. Ct. 76; Durand v. Schulze, 10 C. C. A. 97, 61 Fed. 819).

It would be as futile as it is inadmissible to explore the other parts of the patent for discovery of anything to justify the interpolation of a spray-deflecting device into this claim. If it were possible to sustain it as broadly as it is stated, the appellant might well insist that the specification and drawings supply no pretext for narrowing it by construction, and the question presented is, of course, the same where a constrictive interpretation is invoked by the owner of a patent as where it is sought to impose it upon him against his will. At the outset the specification informs us that:

"This invention relates to improvements in coasters or inclined pleasure railways; and the main feature of the invention consists in an inclined track or way erected near a lake, river, or any other suitable body of water, and a car or toboggan in the form of a boat, adapted to move or slide downwardly over said incline, mainly by the force of gravity, and at the foot of the incline to enter and float upon the body of water as it is propelled by the momentum acquired in its descent over the inclined railway. Besides this main feature, certain novel means are employed in carrying out my invention, as hereinafter described."

Not one word, it will be observed, is here said about spray deflectors. On the contrary, comparison of this general description with the first claim shows them to be, so far as the toboggan is concerned, substantially identical. All that is material in either is that it is said in the one that the toboggan is to be "in the form of a boat adapted to * * * enter and float upon the body of water," and in the other that it is to be "a boat-shaped car or toboggan, adapted * * * to enter and float forwardly on the water." Manifestly, the meaning of the language here quoted is, in each instance, precisely the same; and nothing further is anywhere said about the toboggan, except as follows:

"I have shown in the drawings a preferred form of construction for the boat-shaped car or toboggan, G, similar in the outlines to an ordinary flatboat, with its flat bottom curved or sloped upwardly at its forward end, g, so that it will enter the water without any shock or concussion, its rear end, g1, partly sloped upwardly and partly vertical, and with vertical or approximately vertical sides, g2, and with seats, ii, for the passengers. On each side of the toboggan it is preferable, also, to have a spray-deflecting board, I, which is broad at its rear end, runs to a point at its forward end, and which is fixed in position on the car or toboggan, as shown, with its upper edge or side in about same horizontal plane as the top of the boat. These boards will deflect the spray or water outwardly, which is thrown upwardly by the rapid movement of the car or toboggan, and prevent it striking the occupants thereof. The spray deflected by each board, I, may be utilized to produce a pleasant effect on the eye by means

of a scroll-shaped or convoluted plate, i, placed at the upper edge or side of each board, I, as shown at Fig. 7, which will concentrate the spray and discharge it from the rear end of the scroll in an ornamental stream."

We are not able to perceive in this statement any warrant whatever for supposing that the patentee intended to limit his assertion of invention to a boat-shaped toboggan when provided with "a spray-deflecting board." Indeed, he seems to have been solicitous that such intention should not be ascribed to him, for, although the drawings exhibit spray deflectors, he is careful to say that they show, not an exclusive form, but "a preferred form of construction"; and he adds, not that it is essential, but that "it is preferable, also, to have a spray-deflecting board." Furthermore, it is difficult to understand why, if the drawings should be considered as controlling, the "scroll-shaped or convoluted plate," which they also depict, ought not to be regarded as a material feature, and this plate, it is admitted, the appellees do not use. We are of opinion that the court below was right in refusing to read into this claim the additional element suggested, not only because its own terms, which are plain and absolute, inhibit it, but also because the patent, as a whole, does not sanction it.

2. Claim 4 is stated to be for a combination, but, substantially, it is simply for a toboggan of a certain configuration, for it is not denied that a boat may be so constructed that its sides will themselves have the form of, and operate as, spray deflectors; and, this being so, it follows that if a boat so formed, and intended for ordinary use, would not present patentable novelty, the objection is not overcome by giving it the required shape by fixing additional boards to it, and then using it as a toboggan as well as for a boat. "An ordinary flatboat," having all the features described by the patentee, was, of course, old. Such a boat the patentee adopted, and he altered its outline. In doing this, he was concerned with it only as and for a boat. Viewing it as a toboggan merely, all that he did to it was absolutely useless. Did he, then, contribute to the art of boat-making anything which, in the sense of the patent law, was new? He proposed that his craft should not ship water, and to this end he so fashioned it that the water would be deflected from its sides. Broadly speaking, this was as old as navigation. It has always been done, and we are not required to shut our eyes to the fact that with this object, among others, the sheer and the flare of vessels of all classes have been almost infinitely varied. King v. Gallum, 109 U. S. 99–101, 3 Sup. Ct. 85. To uphold, under these circumstances, a patent for so slight a deviation from pre-existing forms as, at the utmost, Newburg devised, it would be necessary, we think, to hold that it is not only the design of the patent laws "to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts," but also "to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures." Atlantic Works v. Brady, 107 U. S. 192–200, 2 Sup. Ct.

225. Indeed, we do not believe that this claim would ever have been allowed if it had been plainly presented as for the contour of a boat, and yet it is, when rightly understood, a claim for precisely that, and for nothing else besides. But, even as a distinct device, this spray board was not new. Such boards, having more or less outward inclination, and serving to deflect the water from the boat, were well known before this patent was applied for, and are exemplified by several prior patents which appear in this record, and to which the learned judge who sat in the circuit court has sufficiently, though not completely, referred. Upon any view which can be taken of this claim, we find it impossible to sustain it.

3. Separately considered, none of the elements of the sixth claim was new. As to the "spray deflectors" nothing more need be said, and the proof that each and all of the remaining details were old is absolutely conclusive. Unless, therefore, the patentee exhibited invention in the assemblage of these parts, he did nothing upon which this claim could be supported; and that in bringing them together he did not perform an inventive act, the cases cited by the court below, as well as others to which it would be superfluous to refer, quite clearly show. The toboggan sport had been for some time pursued upon the land when this patentee conceived the idea that its attractiveness might be enhanced by having the "inclined track or way erected near a * * * suitable body of water," and so arranged that, at the foot of the inclined track, the car (shaped like a boat) would enter and float upon the water. But "mere conception is not invention" (Forgie v. Supply Co., 17 U. S. App. 254–288, 7 C. C. A. 551, and 58 Fed. 871), and, as for the means necessary to the practical realization of this conception, they were already at hand. These the patentee associated, but did not combine. The railway, the guard plates, and the car, in function and in result, he left unchanged; and the spray deflectors which he fixed to the latter are wholly inoperative until the water is reached and the entirely distinct and separate service of a boat becomes requisite. This requirement made it necessary, of course, that the toboggan should differ somewhat from those which had been used exclusively upon land, but the change which was made was merely structural, and did not involve invention. Maitland v. Gibson, 28 U. S. App. 53–82, 11 C. C. A. 446, and 63 Fed. 840. The decree of the circuit court is affirmed.