AMERICAN BALL BEARING CO. v. FINCH.

(Circuit Court of Appeals, Sixth Circuit. February 16, 1917.)

No. 2848.

1. PATENTS ⚖➡328—VALIDITY AND INFRINGEMENT—ANTI-FRICTION BEARING.
    The Baker patent, No. 753,820, for an anti-friction bearing for mounting and turning the front wheels of an automobile, claim 1, *held* valid and infringed.

2. PATENTS ⚖➡42—INVENTION—"NEW RESULT."
    An invention achieves a new result, where a function which had been performed by other means was performed to an efficient degree by an association of means never before combined, though all of them were old, and some of the changes seemed to be only in degree.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 49.]

Appeal from the District Court of the United States for the Northern District of Ohio; John H. Clarke, Judge.

Suit by the American Ball Bearing Company against Edward B. Finch for infringement of patent. Decree for defendant, and complainant appeals. Reversed and remanded, with instructions to enter a decree for complainant.

Livingston Gifford, of New York City, for appellant.

F. P. Fish, of Boston, Mass., for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and HOLLISTER, District Judge.

DENISON, Circuit Judge. This suit was brought in the District Court by the Ball Bearing Company for infringement of Baker patent No. 753,820, issued March 1, 1904, upon application filed February 24, 1902, for an anti-friction bearing; and plaintiff below appeals from a decree holding the patent void for lack of invention. The patent has to do solely with the means for mounting and turning the front or steering wheels of an automobile. According to the now familiar practice, the front axle does not turn upon a central pivot, but is rigid; and each axle end, which forms a spindle for the hub, is practically hinged to the main axle. At or adjacent to its inner end the

hub spindle carries, rigidly attached thereto, a vertical pintle, and the upper and lower ends of this pintle are pivotally mounted in brackets projected up and down from the axle, or are in some other form made to constitute a hinged joint between the axle and hub spindle. This is known as the steering knuckle, and from the knuckle structure an angle arm projects horizontally and rearwardly. Obviously, pushing or pulling on this angle arm will turn the hinged wheel one way or the other. The rear ends of the two angle arms are operatively connected with the steering wheel of the machine.

The three claims in suit are in the margin,[1] and, with the foregoing explanation, their meaning will be quite clear when applied to the single figure of the drawing here reproduced.

[1] The substantial question involved in the case is—invention or not? Anticipation, in the accurate use of that term, is not claimed.

[1] "1. In combination with the spindle and the hub, two sets of balls interposed between said spindle and hub adjacent the ends thereof, said balls being of different sizes, the larger of said balls being located in line ·with the traction and tread of the wheel, and a steering knuckle carried by said spindle in juxtaposition to the larger balls.

"2. In combination with the spindle formed adjacent its inner end with a collar, a loose cone abutting said collar, a cone on the outer end of the shaft, a hub, races for different sizes of balls in the ends of said hub, balls arranged in said races and engaging the cones, the larger balls being located in line with the tread of the wheel, and a steering knuckle carried by the collar of said spindle in juxtaposition to the large balls.

"3. In combination with the spindle, a collar carried adjacent the inner end thereof, and the steering knuckle formed integral with said collar, a hub provided at its inner end with spoke flanges, cones mounted on said spindle the inner end of which engages said collar, balls carried in the ends of the last hub and engaging the cones, said balls being of different sizes, the larger being in alinement with the spoke flanges· of the hub, and means carried by the spindle for adjusting the outer cone."

It is conceded, not only that each element of the claim is old, but that each element is found in earlier associations more or less analogous to those which it occupies in this patent; and the question whether more than mechanical skill was involved in that readjustment and rear-rangement of the elements which Baker first made is close and diffi-cult. From an inspection of claim 1, it is to be seen that Baker's thought had to do with the relative positions of the respective ver-tical planes of the knuckle pintle, the spokes, and the ball bearings at the opposite ends of the hub. The two sets of balls are to be "ad-jacent to the ends" of the hub, the inner set is to be "in line with the traction and tread" of the wheel, and the steering knuckle (pintle) is to be "in juxtaposition to" the inner set. The vertical plane of the spokes is practically identical with the line of traction or plane of con-tact between the tire and the ground. The ordinary form of ball bear-ing hub carried a set of balls near each end and had the spokes mount-ed midway of the hub. There was, necessarily, some horizontal space between the knuckle pintle and the inner ball bearing. There would result a distance of perhaps six inches between the plane of the knuckle pintle and the plane of traction. When it is desired to turn the wheel, in steering, it will be seen that the knuckle pintle forms the fulcrum of a bent lever. $G'$ forms the long arm of the lever, and the distance along the hub from the knuckle pintle to the traction plane forms the short arm. It was obviously desirable to reduce as much as possible the length of this short arm, both in order that the driver at the wheel should get the benefit of all possible leverage and in order that the reverse strains transmitted from the road through the wheels to the steering wheel should be minimized. To get this advantage hubs were made as short as possible, and set as close to the knuckle pintle as they could be, and this positioning was accomplished in a variety of forms.

It was not an unnatural thought that the very best results could be had by getting the tire or spokes and the knuckle pintle into the same vertical plane, and so reducing the short lever arm to zero. This idea was worked out sufficiently to be shown in letters patent by Faure, by Clubbe, and by Knudsen. In each case, as was necessary, the hub was made very large and the spokes correspondingly short. The in-ner end of the hub, or spoke-carrying framework, must be of a di-ameter greater than the length of the knuckle pintle, in order that the wheel might revolve in the plane of the longitudinal axis of this pintle. Here arose at once conflict with other desirable principles. The knuckle pintle cannot be too much shortened without losing its best efficiency. It is customarily, and hence probably in its best form, not less than eight or ten inches long; and no such sized open hub or cen-ter, at least on the smaller wheels, can be provided without creating se-rious troubles. It seems inherently probable that this principle of construction would not be commercially desirable, and this probability is enhanced by the fact that the actual use of the form has been com-paratively small.

Another method of increasing the steering wheel leverage, and decreasing reverse strains, was to incline the knuckle pintle from the vertical, or the hub spindle from the horizontal, whereby the point of ground traction would be more or less approximately in the plane of the pintle. This method also had practical disadvantages which have prevented its general adoption. In specific instances of this use it has been found desirable to minimize the departure from the parallelism of the two planes, instead of increasing their convergence, as would be natural if the theory were satisfactory.

What Baker did was to take the common ball bearing hub, which he found in use in connection with the ordinary steering knuckle, and to move his spoke line or traction line from the center of the hub to its inner end, so that his spokes were mounted directly over his inner ball bearing. Incidentally, and as perhaps the natural step in connection with such mounting of the spokes, he made the inner balls larger than those at the outer end of the hub. In this way he reached a compromise between the old and common form, having excessive length in the short lever arm, and the theoretically perfect, but practically undesirable, Faure form. He materially reduced the practicable length of this short arm. He minimized the disadvantages of the old form and the steering difficulties inherent therein, and he approximated the theoretical advantages of the Faure form, while avoiding the construction difficulties which had discouraged its use. We are convinced that this was invention. There is no way to demonstrate the rightfulness of such conviction; it often seems to be easier to state reasons against than for the existence of invention; but our conclusion is fairly indicated by several considerations.

· The general idea formulated by Baker's first claim has been widely adopted; so it must be clear that the idea is a valuable one, and on its disclosure appealed to the art as useful. ·It now seems to have been a simple thing to mount the spokes at one end of a hub, instead of in the middle, and to make the appurtenant changes; yet the problem which Baker solved in this way had been present from the beginning of the automobile art (true, not many years); there had been efforts to solve it on other principles; there had been a considerable number of patents issued in the immediate field; and this simple scheme had never occurred to anybody. We are impressed with it as a rather striking example of that patentable utility which is strongly indicated by the very simplicity of the step, by the repeated, but unsuccessful, reachings in many directions for the desired result, and by the general adoption of the patented device as soon as the patented discovery was made.

What we said in Cadillac Co. v. Austin, 225 Fed. 983, 990, 141 C. C. A. 105, has application here. To build and mount to the best advantage a wheel on a horse-drawn wagon intended for a speed of four miles an hour, or upon a buggy intended for a higher speed for a short time, is not at all the same as to make a device of superficially similar character intended for use at high speeds and for long periods. The

road shocks to an automobile steering gear in actual use reach enormous totals, in sums of pounds of stress, and strains that to a wagon wheel are negligible in an automobile may be fatal. In such an environment "questions of invention cannot be decided on prima facie rules," primarily applicable to other conditions. The testimony of experts points out how Baker's combination avoids, or meets to the best advantage different ones of these hub and steering strains. While we are mainly impressed by the success with which he meets the chief strain involved, the only one of which he speaks in his patent—viz. strain upon the entire steering gear—the undoubtedly successful meeting of other strains upon the hub itself is not without force on the question of patentability.

We do not overlook the argument that Baker made only an advance in degree as to the most characteristic materialization of his idea—viz. mounting the spokes at one end of the hub. This argument is based most typically upon the patents to Sperry and Grant. In each the spokes were mounted somewhat on the inner half of the hub—perhaps halfway from the hub center to the inner end—but in neither were the balls at the inner end either exactly or substantially in the spoke and traction plane. Their drawings suggest that each carefully avoids the idea which Baker accepts and uses; and since they were both striving to lessen the distance between knuckle pintle and spoke plane, and since moving their spokes to the end of the hub instead of halfway would have doubled their gains, observing what they did confirms the belief that to mount the spokes at the extreme end of the hub, and directly over the balls, was not an obvious step. They seem to declare that they had reached the limit of what was practicable in the sidewise shifting of the spokes.

Knudsen presents, from another angle, the argument of degree. He gets his anti-friction balls and his spokes close enough together so that the plane of the balls will strike the ground at about the edge of the tire, so that if a tire runs flat enough its traction surface may slightly overlap the ball plane; but this is to force a similarity. Knudsen did not have this result unless obscurely and incidentally; he did not describe it, and probably did not have it at all; his tire was not intended to run flat.

[2] The critical fact upon this question of degree, as well as upon the whole question of patentability, is that Baker's improvement, while in degree, was not merely in degree; and, while it was a change in the location of parts, it was not merely that. In a very proper sense he achieved a new result. Of course, the ultimate function was not new; that ultimate function—minimizing the leverage for reverse strains—had been performed even to a greater extent, but Baker realized that function to an efficient degree by an association of means which had never before been combined. To do this was to get a new result in the meaning of the patent law, even though all the elements were old, and even though some of the changes made seem to be only in degree. Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 53 L.

Ed. 1034; Minerals Separation, Ltd., v. Hyde, 242 U. S. 261, 37 Sup. Ct. 82, 61 L. Ed. ——, decided December 11, 1916.

We think the first claim is valid as broadly as it seems to read; and, as so construed, it is infringed. Defendant has mounted its larger set of anti-friction balls adjacent to the inner end of the hub, substantially, if not wholly, "in line with the traction and tread of the wheel." The center of the balls does not register with the center of the spokes, but nearly so, and the balls project little, if any, beyond the plane of the spoke edges. Defendant certainly has taken the substance of whatever utility there is in Baker's relative location of balls, spokes, inner hub end and knuckle pintle; and it is not material that by reason of a slight departure he fails to get one hundred per cent. of the utility of the patented form.

It is impossible to construe claim 1 as containing those limitations found in claims 2 and 3. Giving to these limitations their due effect, in order to make these claims different from claim 1, we doubt whether claims 2 and 3 are infringed; but this may be passed without decision. Pending this suit, defendant has taken a license and agreed to pay a stated royalty, if any one of the claims is sustained, and held to be infringed, by the final result of this suit; and consequently the issue of infringement as to claims 2 and 3 has become immaterial. Whether or not an injunction against infringement ought ever to be denied at final hearing because of mere laches, the facts of this case do not justify refusing relief for that reason.

The decree below must be reversed, and the record remanded, with instructions to enter a decree that the first claim is valid and infringed. There will be no occasion for an injunction or accounting.[1]

---

[1] Pending this appeal, the parties have made a settlement of the controversy, contingent upon a finding of infringement.