INLAND MFG. CO. v. AMERICAN WOOD RIM CO.

(Circuit Court of Appeals, Sixth Circuit.
October 5, 1926.)

No. 4551.

**1. Patents �köö328.**

Kenrick patent, No. 1,434,616, claims 7, 9, and 14, for wooden steering wheel for automobiles, etc., *held* valid and infringed.

**2. Patents �köö112(3).**

Issuance of patent raises a presumption of invention.

**3. Patents �köö36.**

That automobile maker sought and accepted exclusive right for one year to use wooden steering wheel is evidence that it involved invention; infringer and automobile maker being units of one corporation.

**4. Patents �köö17.**

Invention is not negatived by inventor's use of all knowledge known to mechanics skilled in art, or by simplicity and obviousness of methods by which long-sought result is achieved.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Benson W. Hough, Judge.

Patent infringement suit by the American Wood Rim Company against the Inland Manufacturing Company. Decree for plaintiff, and defendant appeals. Affirmed.

Melville Church, of Washington, D. C., for appellant.

William H. Davis, of New York City (James A. Watson, of Washington, D. C., on the brief), for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge. This appeal involves the validity of claims 7, 9, and 14 of the Kenrick patent, No. 1,434,616, assigned to the American Wood Rim Company, a corporation organized under the laws of the state of Michigan. The Inland Manufacturing Company is a Delaware corporation, a unit of General Motors Corporation, and the successor in business of the Dayton-Wright Company, also a Delaware corporation, which latter company was also made a party defendant to this suit; but, it appearing that it had discontinued the manufacture of the wheels claimed to infringe plaintiff's patent and transferred its business to the Inland Manufacturing Company, the action against the Dayton-Wright Company was dismissed.

The Kenrick patent relates to steering wheels, and particularly to steering wheels

adapted for use on automobiles, airplanes, and motorboats. The claims in suit are printed in the margin.[1] The District Court found all the claims in suit valid and infringed. An interlocutory decree was entered, enjoining defendants from further infringing plaintiff's patent, and referring the cause to a master to take, state and report an account of profits and damages. The defendant appeals.

[1] The only question presented by this appeal is whether the structure of the patent involves invention. If so, there is little or no dispute as to infringement. In the disposition of this question, it is unnecessary to review the evidence at length. In the early days of the automobile, steering wheels, including spider and rim, were made of tubular or cast metal, because of the evident need of sufficient strength to withstand sudden and heavy stresses upon them. Metal rims, while affording the necessary strength, were objectionable because they added to the weight of the wheel and thereby tended to increase the vibration, and because they were uncomfortable to the hand in cold weather and the finish would wear off and soil the hand or glove. For these reasons, as early as 1904, wooden rims were substituted and attached to the metal spider; but, as many drivers prefer to change from holding the rim of the wheel to holding the spokes, wooden spokes were equally as desirable as a wooden rim.

---

[1] 7. A steering wheel, comprising a continuous self-sustaining rim of wood having a surface curved in section, a plurality of wooden spokes secured to said rim at their outer ends extending inwardly on radial lines and having much greater width than thickness, and having gradually decreasing thickness from the inner portion to the outer portion the said spokes having arc shaped inner ends laterally enlarged, the side surfaces of the enlarged portions being in radial planes and abutting those of adjacent spokes forming a continuous hub with a cylindrical opening, a metal sleeve in said opening and means securing said inner ends together on said sleeve.

9. A steering wheel, comprising a continuous self-sustaining rim of wood curved in section, a plurality of wooden spokes of much greater width than thickness secured to said rim at their outer ends extending inwardly on radial lines and having inner laterally enlarged arc shaped ends with abutting side surfaces in radial planes forming a continuous hub portion with a central opening, the upper and lower faces of said spokes at their ends being in planes parallel to the plane of the rim and the intermediate portions being at an angle to that plane, and means for securing the inner ends together.

14. A steering wheel, comprising a wheel, a plurality of wooden spokes the outer ends of the spokes being secured to the rim and the inner ends thereof being enlarged and provided with mortises in their adjacent portions and wooden keys inserted into the mortises to secure said inner ends together, the grain of the wood of the inserted keys lying circumferentially of said rim.

Because of the generally accepted opinion that metal was the only material that would afford sufficient strength, experiments were made with aluminum wheels, which were much lighter, but equally objectionable in other respects. Attempts were then made to produce the equivalent of a wooden spoke by fastening thin strips of wood to the upper and lower sides of the metal spokes, and especially to the spokes that were likely to be grasped by the hand of the driver; but this was not satisfactory and the cost of such a wheel was thought to exceed its advantages. Lobdell, to whom reference is made in the Kenrick application, sought to substitute part wooden spokes for the all metal spokes by a metal hub having radiating sockets to receive the wooden spoke ends; but a patent was refused him, for the reason he had merely substituted short wooden spokes in the radial sockets of the metal hub in place of the spokes of the prior art, and that the advantages claimed for his wheel were inherent, and universally known to reside in the material employed.

Kenrick does not use a metal hub, nor is it claimed by him that his invention resides in the substitution of wooden spokes for the metal spokes of the prior art. The problem he sought to solve was to produce a wheel, consisting of a wooden rim, spokes, and hub, of sufficient strength to resist all sudden and heavy stresses upon it, with the advantages of lightness, superior appearance, greater cleanliness, and greater comfort to the user as compared with the usual wheel having the ordinary metal spokes. The evidence would seem to be conclusive that an all-wooden steering wheel for automobiles, airplanes, and motorboats was new to the steering wheel art at the time Kenrick filed his application for this patent; that such a steering wheel has decided advantages over an all-metal wheel, or a wheel with wooden rim and metal spokes; that the defects and disadvantages of the steering wheels of the prior art were for many years recognized by the trade generally; and that the all-wooden steering wheel of the Kenrick patent is of sufficient strength to meet all requirements.

The Cadillac Motor Car Company, also a branch of General Motors Corporation, recognized the need and requested the American Wood Rim Company to provide it with an all-wood steering wheel and give it the exclusive use for one year. The commercial acceptance of the Kenrick wheel, immediately after the year in which the Cadillac Company had the exclusive use, would indicate that Kenrick did not create the demand, but rather that he met an existing need. It is not claimed in support of the patent that the mere substitution of wood for metal constitutes invention, or that wooden rims or wooden spokes in combination with a metal hub, or a metal hub and radial sockets, are new with Kenrick, but rather that these old elements, in combination with a wholly new construction of an all-wooden hub, form a completed structure new to the art and requiring the exercise of inventive faculties, and definitely beyond the skill of a mechanic in the steering wheel art.

In the construction of the hub of the Kenrick wheel, the inner ends of the spokes are enlarged and are segmental in form, the ends of the individual segments abutting along radial planes, the adjacent faces of the segmental enlargements are grooved or mortised and inserted into each pair of adjacent mortises is a key of wood, the grain of which extends circumferentially of the hub to give the joint the greatest resistive force against breaking. The hub has an axial bore to receive the member which secures it to the steering shaft, and has also a plurality of spaced recesses, one of which extends downwardly into each spoke at a point close to the bore and lying along its central axis, and it is the claim of the appellee that a wheel so constructed entirely of wood is lighter in weight, more attractive in appearance, than the wheels of the prior art; that it is of great strength, and the hub so formed gives rigidity to the structure not realized where this formation of hub is not used.

[2] These claims of the inventor are fully sustained by the oral testimony and exhibits in this case. The utility of the steering wheel of the patent is not disputed. It is not an exact repetition, but clearly an advance over the prior art. It has been accepted as a satisfactory, if not a final response to the demand for a steering wheel that would eliminate the disadvantages of the wheel of the prior art, and so differs from the wheels of the prior art as to receive the approval of the patent office after its rejection of Lobdell, and is entitled to the presumption of invention which attaches to a patent. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 434, 31 S. Ct. 444, 55 L. Ed. 527.

The vehicle wheel art furnished Kenrick absolutely no suggestion. In that art a wooden hub was used, in which the wooden spokes were inserted and a metal band around the periphery of the wheel or felly

held the spokes in place. Where a separate wooden hub was not used, there was such a number of spokes that it was necessary to reduce the inner ends, not enlarge them, and these ends are held in place by metal plates on opposite sides securely bolted together. In steering wheels, only four spokes are used, and the problem of enlarging the inner ends of these spokes, so as to constitute and form a hub of sufficient strength for the purposes for which a steering wheel is used, presented a wholly new feature of wheel making.

It is true that, in some of the earlier patents relating to vehicle wheels, there is an enlarged shoulder near the inner end of the spoke; but this shoulder tapers inwardly, so as to permit all of the spokes to enter the metal hub, which metal hub, adapted to receive the inner end of the spokes, constitute the claimed inventions of these patents.

It is claimed on the part of the appellant that the Cadillac Company "pushed the plaintiff into this all-wood steering wheel business," and to hold this patent valid would be to penalize the Cadillac Company, a branch of General Motors, for its enterprise and its faith in another manufacturer, and "laud the one who put a glue joint where a glue joint is supposed to go." If the production of an all-wooden steering wheel could be accomplished by putting "a glue joint where a glue joint is supposed to go," the demand for such a wheel would have been met long before Kenrick by those skilled in the wood-working art, and endeavoring to do the identical thing that Kenrick has done.

[3] If the production of an all-wooden steering wheel did not involve invention, there would have been no purpose in the Cadillac Company requesting the exclusive right to the use of the Kenrick wheels for one year, and no theory upon which the appellee could have guaranteed such exclusive use. If other steering wheel manufacturers could make an all-wooden wheel and sell the same to other automobile makers, it could have made no difference to the Cadillac Company whether the appellee or other manufacturers sold its competitors. Under such circumstances, its exclusive right to use the Kenrick for a year would have been worthless. That it did request and accept the right to the exclusive use of the Kenrick wheel for a year strongly tends to prove that it believed the production of such a steering wheel involved invention.

[4] It is no argument against invention that the inventor availed himself of all knowledge known to mechanics skilled in the art,

nor is it surprising that, when a definite result has been accomplished, the simplicity of the methods by which it is accomplished would seem to be obvious. The line between the skilled mechanic and the ingenuity of the inventor cannot be accurately drawn in any given case, but where a demand has long existed, and men skilled in the art have sought to meet that demand without success, the argument that the methods employed by the inventor who has solved the problem are so obvious as to involve only mechanical skill, is not entitled to very serious consideration. Diamond Co. v. Consolidated Tire Co., supra; Consolidated Brake-Shoe Co. et al. v. Detroit Steel & Spring Co. et al. (C. C.) 59 F. 902, 908; Star Brass Works v. General Electric (C. C. A. 6) 111 F. 398, 400, 49 C. C. A. 409; American Ball Bearing Co. v. Finch (C. C. A. 6) 239 F. 885, 889, 153 C. C. A. 13.

Affirmed.